# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00131-COA

**MITCHELL P. SMITH AND HORACE HOYT SMITH**                    **APPELLANTS**

**v.**

**FIRST BANK, CHRISTOPHER A. FERRELL,**                    **APPELLEES**
**CYNTHIA FERRELL, JAMES FERRELL AND**
**CHRISTOPHER B. FERRELL, A MINOR, AND**
**CHRISTINA FERRELL, A MINOR BY AND**
**THROUGH THEIR MOTHER AND NEXT**
**FRIEND, CYNTHIA FERRELL**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2011 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | W. BRADY KELLEMS |
| | JOSEPH PRESTON DURR |
| | CHELI KELLEMS DURR |
| ATTORNEYS FOR APPELLEES: | DENNIS L. HORN |
| | JARROD WATKINS TAYLOR |
| | SHIRLEY PAYNE |
| | JOHN DENVER FIKE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S MOTIONS TO SET ASIDE AND VACATE JUDGMENT AND FOR REHEARING AND TO ALTER THE JUDGMENT |
| DISPOSITION: | AFFIRMED: 04/28/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This Court considers a challenge to the circuit court's decision to uphold a default

judgment and related orders.  We find no error and affirm.

## FACTS

¶2. In 2004, Christopher and Cynthia Ferrell bought a home in Lincoln County. They moved in the home with their children: James, Christina, Christopher B. ("Bubba"), and Marna.

¶3. On April 29, 2006, several of the Ferrells were injured when a fight started on neighboring property owned by Mitchell P. Smith.

¶4. On April 26, 2007, the Ferrells filed a complaint for damages against Mitchell, Horace Hoyt Smith (Mitchell's father), and several others. The Ferrells personally served process on Horace on April 27, 2007. Mitchell could not be located, and he was dismissed from this action. However, Horace did not respond, and a default was entered against him on September 6, 2007.

¶5. On January 22, 2009, the Ferrells filed another complaint based on the same facts. This time, the Ferrells served Mitchell with process through his nineteen-year-old son, Brandon. Thereafter, the Ferrells filed a motion to consolidate the two actions. The circuit court granted the motion on October 21, 2010.

¶6. On May 9, 2011, this case went to trial. Neither Mitchell nor Horace appeared to defend himself. The circuit court entered a default judgment against Mitchell and Horace, in the sum of $917,000.

¶7. On June 1, 2012, First Bank received a writ of garnishment on Mitchell's account. Thereafter, the bank mistakenly told Mitchell that he could withdraw all of his money from

his account. Mitchell acted on this information and withdrew all of his money from First Bank.

¶8. On August 23, 2012, Mitchell and Horace filed their motions to set aside the judgment. The circuit court found "that both Mitchell and [Horace] have colorable defenses, and that had they defended these claims at trial, as it was their right to do, the outcome might have been substantially different." However, after weighing the relevant factors, the circuit court ruled that the default judgment against Mitchell and Horace should stand. Their motion was denied. In addition, Mitchell was ordered to return the funds that he withdrew from First Bank. It is from this judgment that Mitchell and Horace now appeal.

**ANALYSIS**

¶9. On de novo review, this Court must first determine whether the judgment is void because of insufficient service of process. *Fletcher v. Limeco Corp.*, 996 So. 2d 773, 776 (¶8) (Miss. 2008). "A court must have jurisdiction, proper service of process, in order to enter a default judgment against a party. Otherwise, the default judgment is void. If a default judgment is void, the trial court has no discretion and must set the judgment aside." *McCain v. Dauzat*, 791 So. 2d 839, 842 (¶7) (Miss. 2001) (internal citations omitted).

¶10. Once the procedural issues are satisfied, we apply an abuse-of-discretion standard of review to the circuit court's decision on a motion to set aside a default judgment. *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (¶8) (Miss. 2009). "[W]here there is a reasonable doubt as to whether or not a default judgment should be vacated, the doubt should be

3

resolved in favor of opening the judgment and hearing the case on its merits." *Id.* (quoting *McCain*, 791 So. 2d at 843 (¶10)).

>    I.    *Whether service of process was proper.*

>    A.    *Horace – Service of Process*

¶11.    Horace argues that he never received service of process and points to a defect on the face of the "Return." The defect is the placing of his name, "Horace Smith," where the month, "April," should be. According to Mississippi Rule of Civil Procedure 4(f), the "[f]ailure to make proof of service does not affect the validity of service." However, the absence of some proof of the receipt of a summons makes the notice questionable. *Mansour v. Charmax Indus. Inc.*, 680 So. 2d 852, 854 (Miss. 1996).

¶12.    Here, even though the return did not properly state the date of process, there was proof of the service of process on Horace. Accordingly, we find that the record includes sufficient evidence to indicate that Horace was properly served with process.

>    B.    *Mitchell – Service of Process*

¶13.    Mitchell asserts that the Ferrells failed to comply with the service requirements of Mississippi Rule of Civil Procedure 4. He claims that they did not use reasonable diligence in serving personal process before using secondary service. Also, Mitchell claims that the process server did not leave the summons at his abode. And, even if it was his abode, the relative located on the lawn outside of the house could not receive service under Rule 4 because that relative did not live there.

4

¶14. According to Rule 4(d)(1)(B),

> if service under subparagraph (1)(A) of this subdivision cannot be made with reasonable diligence, by leaving a copy of the summons and complaint at the defendant's usual place of abode with the defendant's spouse or some other person of the defendant's family above the age of sixteen years who is willing to receive service . . . .

¶15. In 2007, the Ferrells attempted to serve Mitchell personally on a separate lawsuit based on the same facts. At that time Mitchell was out of the country. The Ferrells could not locate Mitchell, and the circuit court dismissed him from the lawsuit.

¶16. In 2009, the Ferrells tried to personally serve Mitchell in a second action based on the same facts. The process server, Gary Windham, went to the address of Mitchell's house and found Mitchell's nineteen-year-old son, Brandon, at that address. Mitchell was not available. Windham then left service of process with Brandon.

¶17. According to *McDaniel v. Burroughs*, 739 So. 2d 461, 463 (¶6) (Miss. Ct. App. 1999), after the process server is unable to locate the party, it is proper to leave summons with a family member over the age of sixteen. In *McDaniel*, "service of process was attempted on McDaniel[] at his usual place of abode. After the process server was unable to locate McDaniel, he left a copy of the summons and complaint with McDaniel's wife." *Id*. Accordingly, we find the Ferrells used reasonable diligence before leaving process with Mitchell's son, Brandon.

¶18. However, Mitchell argues that the house located at the address was not his usual place of abode. In *Alpaugh v. Moore*, 568 So. 2d 291, 293 (Miss. 1990), "a person's 'usual place

of abode' is the place the person is actually living at the time when the service of process is made." (Citing *Hendricks v. Kellogg*, 116 Miss. 22, 76 So. 746 (1917); 62B Am. Jur. 2d *Process* § 208, at 911 (1990)).

¶19. At the time of process in January 2009, Mitchell claimed to be overseas. He testified that when he returned from overseas, in February 2009, he stayed at his house. Specifically he stated, "I come to town. I go back. I don't ever leave the house again."

¶20. Mitchell later testified that he did not live in the house from August 2008 to about April or May of 2009. Instead, he testified that he lived in a trailer located along his driveway to his house. He contends the trailer was his abode at the time of service.

¶21. To show he was not living in the house, Mitchell presented evidence that the house was burglarized and vandalized in August 2008. He claimed to be living in the trailer until the renovations on the house were completed. However, after reviewing the record, we find that there was sufficient evidence to support the circuit court's decision that the house was Mitchell's usual place of abode.

¶22. Finally, Mitchell argues that Brandon did not live at the house. He claimed that Brandon lived in a trailer located at the same address as the house. Here, we find Brandon was "some other person of the defendant's family above the age of sixteen years who [was] willing to receive service . . . ." M.R.C.P. 4(d)(1)(B). Therefore, we find there was sufficient evidence to support the circuit court's finding that Mitchell was properly with process.

## II. Whether the default judgment should be set aside.

¶23. The supreme court discussed the standard for reviewing default judgments:

> This Court reviews the trial court's decision on a motion to set aside a default judgment under an abuse of discretion standard. Default judgments are not favored in the law. If reasonable doubt exists as to whether a default judgment should be vacated, "the doubt should be resolved in favor of opening the judgment and hearing the case on its merits." However, the party seeking relief from the default judgment is not entitled to relief as a matter of right, and this Court will only reverse the trial court where it has abused its discretion.

*Woodruff v. Thomas*, 143 So. 3d 546, 552 (¶11) (Miss. 2014) (internal citations omitted).

¶24. When a circuit court considers a Mississippi Rules of Civil Procedure 60(b) motion to set aside a default judgment, it must weigh: "(1) the nature and legitimacy of the defendant's reasons for his default . . . , (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside." *McCain*, 791 So. 2d at 843 (¶10). Here, the circuit court weighed each factor in making its ruling.

### A. Nature and Legitimacy of the Reason for Default

¶25. The circuit court began with a review Mitchell's and Horace's reasons for default. The circuit court found that the Ferrells properly served Horace and Mitchell with process. In addition, both Horace and Mitchell provided no good cause for failing to answer the complaint. However, "procedural mis-steps . . . , which are grounds for finding the first factor in the default analysis against [a party], are not sufficient by themselves to permit the upholding of the trial court's denial of the motion to set aside the default." *Am. Cable Corp.*

7

*v. Trilogy Commc'n Inc.*, 754 So. 2d 545, 556 (¶44) (Miss. Ct. App. 2000). We find this prong weighs in favor of the Ferrells. Nevertheless, we must still consider the other two prongs.

### B.     Colorable Defense

¶26.    As to the colorable-defense prong, courts have determined that this factor "outweighs the other two, and we have encouraged trial courts to vacate a default judgment where 'the defendant has shown that he has a meritorious defense.'" *Allstate Ins. Co. v. Green*, 794 So. 2d 170, 174 (¶9) (Miss. 2001) (citing *Bailey v. Ga. Cotton Goods Co.*, 543 So. 2d 180, 182 (Miss. 1989)); *see also Flagstar Bank FSB v. Danos*, 46 So. 3d 298, 307 (¶32) (Miss. 2010) (most important factor is the colorable-defense prong).

¶27.    Here, the circuit court found:

> [T]he defendants put on considerable testimony that neither Mitchell nor [Horace] [was] involved in the party or the fight, that neither Mitchell nor [Horace] provided alcohol to the minors at the party, and that neither Mitchell nor [Horace] [was] involved in the fight in any way. In fact, the court is convinced that both Mitchell and [Horace] have colorable defenses, and that had they defended these claims at trial, as it was their right to do, the outcome might have been substantially different.

We find the circuit court did not abuse its discretion in finding a strong colorable defense. However, while a colorable defense is the strongest factor, prejudice to the plaintiff may prevent a default judgment from being vacated. *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987). Therefore, we must still consider the prong of prejudice to the plaintiffs.

8

## C.   Nature and Extent of Prejudice to the Plaintiffs

¶28.   The third prong of the balancing test is "the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside." *McCain*, 791 So. 2d at 843 (¶10).

¶29.   Here, the circuit court found:

> The third prong . . . weighs against the defendants.  Here, the damage was inflicted over five years ago, the lawsuit has been litigated for five years, Brandon Smith, a key witness is now deceased, and unable to testify, and the plaintiffs followed the rules of civil procedure in attempting to file and serve the lawsuit.  For these reasons, the court finds that setting aside the default judgment would result in substantial prejudice to the plaintiffs.

As a result, the circuit court's decision was based primarily on the finding that setting aside default judgment would cause the Ferrells substantial prejudice.  "The fact that 'the injured plaintiff is without a resolution to her claim for that period of time [i.e., the period of delay caused by the defendant's default]' constitutes prejudice." *Rogillio*, 10 So. 3d at 472 (¶23).

¶30.   We agree with the circuit court.  Mitchell and Horace had years to respond after receiving service of process.  Also, after Mitchell became aware of the final judgment against him in November 2011, he still did not take any action until over nine months later.

¶31.   Recovery under Rule 60(b)(6) "is reserved for exceptional and compelling circumstances.  It must be based on some other reason than the first five clauses, and it must be some ground which will justify relief from the final judgment." *Bryant Inc. v. Walters*, 493 So. 2d 933, 939 (Miss. 1986).  Mitchell and Horace present no exceptional or compelling circumstances.

¶32.   Therefore, after reviewing the record and relevant factors, we find the circuit court

did not abuse its discretion when it denied the motion to set aside the default judgment.

   III. *Whether Mitchell should return mistakenly released funds to First Bank.*

¶33. After the court entered a default judgment against Mitchell, First Bank received a writ of execution followed by a writ of garnishment. Once the bank received the writ of garnishment, the circuit court dismissed the writ of execution. Upon the dismissal of the writ of execution, the bank called Mitchell and told him that he could withdraw his money from his account. After being instructed by the bank, Mitchell withdrew all of his money, totaling $19,537.26.

¶34. At the hearing to set aside the default judgment, the bank asked the circuit court to order Mitchell to return the money to avoid unjust enrichment. Unjust enrichment was addressed in *Dunn v. Dunn*, 853 So. 2d 1150, 1153-54 (¶12) (Miss. 2003):

> Money paid to another by mistake of fact, although such mistake may have been caused by payor's negligence, may be recovered from the person to whom it was paid, in an action for money had and received. The ground on which recovery is allowed is that one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience should refund it. In order that this rule may apply, the party to whom the payment mistake was made must be left in the same situation after he refunds it as he would have been left had the payment not been made.

¶35. Ultimately, the circuit court ruled that the default judgment against Mitchell and Horace should stand. Upon this holding, the circuit court ordered Mitchell to return the withdrawn funds to the bank and ordered the bank to release the funds to the Ferrells.

¶36. We find First Bank unjustly enriched Mitchell. Therefore, Mitchell must repay the

bank the full amount pursuant to the circuit court order.

## CONCLUSION

¶37.   Upon reviewing the record, we find both Mitchell and Horace received service of process.  Further, the circuit court did not abuse its discretion when it refused to set aside the default judgment.  For these reasons, the circuit court's decision to uphold the default judgment and related orders is affirmed.

¶38.   **THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.  JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**